John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
(703) 691-4940
*Counsel for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

_____

IN RE  RAMJAY INC

     Debtor in Possession

_____

)
)  Docket Number 21-10809-BFK
)  Chapter 11 (Sub-Chapter V)
)
)

## PLAN OF REORGANIZATION

The Debtor proposes the following Plan of Reorganization (the "Plan") pursuant to Sub-Chapter V of Chapter 11 of Title 11 of the United States Code (the "Code"):

## ARTICLE I - DEFINITIONS

1.01 "Administrative Claim" means a Claim that has been allowed with administrative priority under § 503 of the Code.

1.02 "Allowed Claim" means a Claim:

(a) If no objection to the allowance has been made within any applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan: (i) in the amount for which either a proof of claim has been filed with the Court within the applicable period of limitation fixed by Fed. R. Bankr. P. 3003, the Rules, or an order of the Court; or (ii) in the amount scheduled in the list of creditors prepared and filed with the Court pursuant to Fed. R. Bankr. P. 1007(b), as such may be amended pursuant to Fed. R. Bankr.P. 1009 prior to the Confirmation Date, and not listed therein as disputed, contingent, or unliquidated.

(b) If an objection to the allowance thereof has been interposed, within any

applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan, in

the amount determined by the Court by a Final Order allowing the Claim.

1.03    "Allowed Secured Claim" means an Allowed Claim that is secured by a lien on

property in which the Debtor's estate has an interest, to the extent of the value of such property that

is available to such claimant.

1.04    "Allowed Unsecured Claim" means an Allowed Claim to the extent that it is not an

Allowed Secured Claim.

1.05    "Applicable Rate" means the interest rate of 4.5% which will be applied to amortize

any Allowed Secured Claim pursuant to *Till v. SCS Credit Corp.*, 541 U.S. 465 (2013) over the

commitment period. However, with respect to the Allowed Secured Claim of the City of Alexandria

(the "City") the Applicable rate shall be the statutory rate of 5%.

1.06.   "Cash Collateral Order" shall mean the Order Authorizing Use of Cash Collateral

and Granting Adequate Protection [Docket Entry No. 75] as well as any other order entered

(subsequent to the date of this Plan) incident to the Debtor's Motion to Authorize Use of Cash

Collateral and Granting Adequate Protection [Docket Entry No. 46] (the "Motion") inclusive of any

modifications or amendments to the Motion made subsequent to the date of this Plan.

1.07    "Claim" means any right to payment, or right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment, against the Debtor that existed on or as

of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced

to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

secured, or unsecured.

1.08    "Confirmation Date" means the last date upon which the order of confirmation has

been both entered by the Court and docketed by the Clerk.

1.09    "Court" means the U.S. Bankruptcy Court for the Eastern District of Virginia.

1.10    "Creditor" means a person holding a claim.

1.11    "Disputed Claim" shall have the meaning set forth in Article XIV of this Plan, and shall also include (without limitation) the claim of Newtek Small Business finance, LLC ("Newtek") as set forth in the Objection to Claim [Docket Entry No. 82].

1.12    "Effective Date" means 30 days from the date upon which the Order of Confirmation of this or any amended plan of reorganization filed by the Debtor is entered by the Court assuming that no appeal from said Order of Confirmation is filed. If there is an appeal, the Effective Date will be 30 days after the date on which all appeals have been withdrawn, dismissed or otherwise completed, or 30 days after any such order becomes dispositive of said appeal and confirming a plan of the Debtor becomes final and subject to no further appeal.

1.13    "Equity Interest" means the equity interests of Jayasekar Jayaraman ("Jayaraman") and Deepthi Jayasekar ("Jayasekar") in the Debtor.

1.14    "Final Order" means an order of a court as to which any appeal that has been or may be taken has been resolved or as to which the time for appeal, or further appeal, or petition for a writ of certiorari, has expired.

1.15    "Order of Confirmation" means the order entered by the Court confirming the Plan.

1.16    "Person" includes an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision.

1.17    "Petition Date" means the date the Debtor filed its petition for relief.

1.18    "Post-petition Creditor" means a person holding a claim, except that it has accrued after the Petition Date, but who has not received allowance of such Claim with administrative priority under § 503 of the Code.

1.19    "<u>Professional Person</u>" means a Person employed as a professional in the Case.

1.20    "<u>Projections</u>" shall me the Debtor's Budget, attached as <u>Exhibit 1</u>.

1.21    "<u>Proposed Monthly Dividend</u>" shall mean, for any 12-month period addressed in the Projections, the average value of the row entitled "Dividend" for the 12-month period.

1.22    "<u>Retained Vehicles</u>" mean those 5 vehicles of the Debtor as more particularly described on page 6 of the Motion.

1.23    "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure, as supplemented and/or modified by the local bankruptcy rules as adopted by the Court as amended from time to time.

1.24    "<u>Vehicle Values</u>" means the value of each motor vehicle as set forth on <u>Exhibit 2</u>.

## <u>ARTICLE II – DISCLOSURES</u>

2.1    The purpose of this disclosure is to provide parties with a brief history of the business operations of the debtor. This disclosure should provide parties with the information required under 11 U.S.C. § 1190. This disclosure sets forth certain information regarding the debtors' assets, pre-petition history, significant events that have occurred in this case, and other sections of this Plan describe the debtor's anticipated financial affairs after confirmation. Creditors and other parties in interest are advised to read the Plan carefully and obtain the advice of independent legal counsel if desired.

2.2    All parties are advised and encouraged to read this Plan in their entirety before voting to accept or reject the Plan. Statements made in this disclosure are qualified entirely by reference to the Plan and other Exhibits served with the Plan. This disclosure contains summaries of certain provisions of certain valuations and other financial information, and certain events related to the Debtor's Chapter 11 case. Although the debtor believes that this information is accurate, such summaries are qualified to the extent that they are summaries and do not set forth the entire text of

documents referred to. The information in this disclosure has been provided by the Debtor and its

agents in good faith after a reasonable investigation, but the debtor is not able to warrant or

represent that the information contained herein, including the financial information, is without any

inadvertent inaccuracy or omission.  Certain information contained in this disclosure and other

portions of this Plan are, by their very nature speculative, containing estimates, assumptions and

projections that may not be borne out by future events. Except as specifically noted in this Plan, this

disclosure does not reflect any events or conditions that may occur after this date, nor has the

information contained herein been audited. The information contained in this disclosure has been

provided by the debtor, its attorney, and their agents.

2.3     The Debtor was organized as a Virginia corporation in 2003 to provide shuttle, bus

and other transportation in the Washington Metropolitan area.  Prior to the SARS-Cov-2 virus, the

Debtor transported around 4500 people a day using a fleet of 40 vehicles with 60 employees.

2.4     In 2017, the Debtor obtained a loan (backed by the Small Business Administration)

from Newtek.  The obligations under this loan were guaranteed by Shastha, USA, Inc. ("Shastha")

and the principals of the Debtor (Jayaraman and Jayasekar).  Incident to this loan, Newtek obtained

a first priority lien upon all assets of the Debtor, including 21 motor vehicles.  Pursuant to the Proof

of Claim filed by Newtek (but subject to a pending claim objection), there is a claimed balance due

of $1,854,327.12.  Incident to the guaranty of the loan by Shastha, Shastha also granted a blanket

lien in favor of Newtek.[1]

2.5     In 2019, Newtek commenced a civil action for damages against the Debtor, the

Debtor's principals, and Shastha.  At the same time, the Newtek commenced a second civil action in

---

[1] Counsel has not investigated the assets of Shastha which may be encumbered by Newtek's lien.
However, a facial review of the security instrument would suggest that the lien is comprehensive.

detinue against the Debtor for possession of certain collateral.  In May 2021, prior to trial, the

Debtor filed a petition for relief and Jayaraman also filed a petition for relief.  Thereafter, Newtek

obtained a judgment against Jayasekar and Shastha.

2.6    The Debtor's pre-petition management was provided by Jayaraman and such

management shall continue.

2.7    The principal circumstances and events which gave rise to this bankruptcy case was

the reaction to the SARS-Cov-2 pandemic and the attendant diminution of commercial activity.

The Debtor's business activities were sharpy curtailed and only recently have begun to recover (and

even then, delicately so owing to a cautious and deliberate resumption of commercial activity);

however, any nascent recovery is subject to reactions by the business community to the "Delta"

variant of the SARS-Cov-2 pandemic.  Notwithstanding the foregoing, the Debtor submits that any

recovery in its industry will be materially less so than the general business environment due to the

perhaps permanent "work-form-home" circumstances.

## ARTICLE III - DESCRIPTION OF PLAN

This is a reorganizing Plan to be funded by the operations of the Debtor.   The Debtor's

projections of its monthly income and expenses as well as the Debtor's projections of dividends

under this Plan are set forth in Exhibit 1.

## ARTICLE IV CRAMDOWN

The Debtor invokes the "cramdown" entitlement under 11 U.S.C. §1129(b) and 11 U.S.C.

§§ 1191(b), (c), and (e) of the Code. That is, as long as the plan does not discriminate unfairly, and

is fair and equitable with respect to any class of claims or interest that is impaired and has not

accepted the Plan, and so long as the plan provides that all of the projected disposable income of the

debtor to be received in during the commitment period, beginning on the date that the first payment

is due under the plan will be applied to make payments under the plan; or the value of the property

to be distributed under the plan during the commitment period is not less than the projected

disposable income of the debtor, the Court may confirm the Plan.

### **ARTICLE V - CLASSIFICATION OF CLAIMS AND INTERESTS**

5.1.    All claims, defined under §101(4) of the Code and all interests in equity securities

as defined in §101(15) of the Code and are classified as follows:

5.2.    Class 1 (unimpaired): Allowed Administrative Claims. The Plan contemplates

paying the any allowed fees to counsel for the Debtor (John P. Forest, II) and any allowed fees to

the Sub-Chapter V Trustee (Scott W. Miller) in full on the Effective Date.

5.3.    Class 2 (unimpaired):

(a)    the priority component of the claim of the Internal Revenue Service (the

"IRS") (Proof of Claim No. 10) of $797.41;

(b)    the priority wage claim of Jayaraman (Proof of Claim No. 21);

(c)    the under-secured component of the claim of the City as set forth in Proof of

Claim No. 24; and

(c)    in the event the Virginia Department of Taxation may file a Proof of Claim,[2]

then any such priority amount.

5.4.    Class 3 (unimpaired): the Allowed Secured Claim of Newtek.

5.5    Class 4 (unimpaired): the Allowed Secured Claim of Ally Financial with respect to

Proof of Claim Nos. 1, 2, 3, and 5-9.

5.4    Class 5 (unimpaired): the Allowed Secured Claim of Huntington National Bank

---

[2]  The deadline for governmental entities to file a Proof of Claim is November 1, 2021.

(sometimes referred to as TCF Finance).

5.5    Class 6 (unimpaired): the Allowed Secured Claim of S&P Financial Services.

5.6    Class 7 (unimpaired): the Allowed Secured Claim of CIT Direct Capital.

5.7    Class 8 (unimpaired): the Allowed Secured Claim of GM Financial.

5.8.    Class 9 (unimpaired): the Allowed Secured Claim of the City as set forth in Proof of

Claim No. 24, but only to the extent that the liens claimed allow the City to hold an Allowed

Secured Claim.[3]

5.9.    Class 10 (impaired):

(a)    the claim of U.S. Small Business Administration [Secured Claim 2.29];

(b)    the claim of U.S. Small Business Administration [Secured Claim 2.28];

(c)    the claim of Fundbox [Secured Claim 2.21];

(d)    the claim of Accel Capital [Secured Claim 2.1]; and

(e)    the claim of MBFMPO [Secured Claim 2.23]; and

While each of these creditors had a perfected security interest, after consideration of the superior,

perfected security interest of Newtek and the value of the collateral in which any of these creditors

had a perfected security interest, each of these claims is entirely unsecured.

---

[3]  Within Proof of Claim No. 24, the City claimed a tax lien against 27 vehicles.  Only 8 vehicles
owned by the Debtor did not have a perfected, pre-petition lien and each vehicle owned by the
Debtor which was encumbered by a pre-petition consensual lien was worth less than the debt
secured by such lien.  Therefore, the amount of Proof of Claim No. 24 which is allocated toward
any 8 of these vehicles would represent an Allowed Secured Claim and the remainder of the tax lien
claim would represent a priority unsecured claim under Class 2.  The vehicles to which the tax lien
in favor of the City have attached are reflected in Exhibit 3.  Because the Debtor cannot identify the
8 vehicles to which the lien may attach and constituted an Allowed Secured Claim, the Debtor
proposes that the City hold an Allowed Secured Claim in the amount of $8,178.28 (which
represents eight times the average tax claim $1,019.66) for the 27 vehicles as to which the City
claims a lien.

5.10    Class 11 (impaired):  trade creditors who hold general unsecured claims.

5.11    Class 12 (impaired):

(a)      the claims of all non-trade creditors who hold scheduled general unsecured

claims (those persons holding unsecured claims which are not entitled to any propriety) including

the non-priority component of the IRS claim (Proof of Claim No. 10);

(b)      the claim of Niefeld IP Law PLLC (Proof of Claim No. 14); and

(c)      the claim of Ally Financial (Proof of Claim No. 4).

5.12    Class 13 (impaired): the under-secured component of the claims of any creditors

holding a scheduled secured claim to the extent such part does not consist of an Allowed Secured

Claim.

5.13    Class 14 (impaired): the under-secured components of the claims of any creditors

holding a scheduled secured claim to the extent such part does not consist of an Allowed Secured

Claim and: (i) the holder of such claim is the beneficiary of additional collateral pledged by a third-

party to secure such claim; and (ii) there are third-party guarantors of such claim.

5.13    Class 15 (impaired): the general unsecured claims of Jayaraman (Proof of Claim No.

23) and Jayasekar (Proof of Claim No. 22).

5.14    Class 16 (impaired):  the claim of Advantage Funding.  This claim was scheduled as

disputed.  Notice of the requirement to file a Proof of Claim was given incident to the Notice to

Creditors.  *See* Docket Entry No. 31.  An additional notice was given as set forth in Docket Entry

No. 43.  The claims bar date was July 13, 2021.  No proof of claim was filed.

5.15    Class 17 (impaired): the claims of the Corporation Service Corporation [Secured

Claims 2.15, 2.16, 2.17, 2.18, 2.19, and 2.20].  Notice of the requirement to file a Proof of Claim

was given incident to the Notice to Creditors.  *See* Docket Entry No. 31.  An additional notice was

given as set forth in Docket Entry No. 43.  The claims bar date was July 13, 2021.  No proof of

claim was filed.

5.16    Class 18 (impaired):  the Equity Interests.

## ARTICLE VI - ADMINISTRATIVE EXPENSES

6.1.    Allowed Administrative Claims [Class 1] shall be paid in full, on the latter of the

Confirmation Date or the date they are allowed by an Order of the Bankruptcy Court. The payments

contemplated by the Plan shall constitute full satisfaction of allowed Administrative Claims.

Administrative Claims include any post-petition, unpaid bills or charges incurred in the ordinary

course of business and the fees and expenses allowed to professionals employed upon Court

authority to render services to the Debtor during the course of this case.

6.2.    John P. Forest, II has been engaged and approved as a professional to represent the

Debtor during the pendency of this bankruptcy case and Scott W. Miller has been appointed to serve

as Sub-Chapter V Trustee.  Any fees for these persons are administrative claims payable by the

Debtor pursuant to the Plan.

6.3     To be compensated, all professionals must apply to the Court for compensation and

will be paid the amount which the Court allows.

## ARTICLE VII – ALLOWED SECURED CLAIMS - CLASSES 3-9

7.1.    The amount of the Class 3 Allowed Secured Claim is $420,631.25 and is calculated

by taking the value of the Debtor's cash on hand of $11,451.98, the value of the Debtor's accounts

receivable of $239,909.27, and the value of the Retained Vehicles, from which the sum of $5,270

per installment of the cash collateral payments (representing the cash payments under the Cash

Collateral Order) is subtracted.[4]  Newtek will receive a monthly dividend as set forth in the Budget

---

[4]   The amount of this Claim is subject to the pending Objection to Claim.

(representing the amortized value of this claim at the Applicable Rate).

7.2.    The amount of the Class 4 Allowed Secured Claim is $88,000 and is calculated by application of the Vehicle Value of the collateral securing this claim. Ally Financial will receive a monthly dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).  **The amount of this dividend is calculated in accord with Section 23.8 of this Plan.**

7.3.    The amount of the Class 5 Allowed Secured Claim is $41,000 and is calculated by application of the Vehicle Value of the collateral securing this claim. Huntington National Bank will receive a monthly dividend as set forth in the Budget (representing the amortized value of this claim at the Applicable Rate).

7.4.    The amount of the Class 6 Allowed Secured Claim is $40,000 and is calculated by application of the Vehicle Value of the collateral securing this claim. S&P Financial Services will receive a monthly dividend as set forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.5.    The amount of the Class 7 Allowed Secured Claim is $20,000 and is calculated by application of the Vehicle Value of the collateral securing this claim. CIT Direct Capital will receive a monthly dividend as set forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.6.    The amount of the Class 8 Allowed Secured Claim is $45,000 and is calculated by application of the Vehicle Value of the collateral securing this claim. GM Financial will receive a monthly dividend as set forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.7    The amount of the Class 9 Allowed Secured Claim is $8,157.28 and is calculated as

set forth in Note 3, supra.  The City will receive a monthly dividend of $153.95 (the amortized value of the collateral over the commitment period at the statutory rate of 5%).

7.8     The holders of the Class 3-8 Allowed Secured Claims will receive their monthly dividend commencing on first business day of the first month after the Effective Date and continuing on the first business day of each successive month for the following 59 months.

7.9     Each lien securing the holder of a Class 3-8 Claim shall be reduced and modified down to the amount of the appropriate Allowed Secured Claim as of the date of this Plan.

## ARTICLE VIII - PRIORITY CLAIMS - CLASS 2

The holders of any Class 2 claims shall receive a monthly dividend in the amount of the Proposed Monthly Dividend to be shared, pro-rata, by the holders of all Class 2 claims commencing on first business day of the first month after the Effective Date and continuing until each holder of a Class 2 Claim shall have received payment of the amount of its claim.

## ARTICLE IX - UNSECURED CLAIMS - CLASS 10-15

9.1     Beginning upon the first day of the first month after the Debtor shall have made all payments to the holders of Class 2 claims, the holders of Class 10-15 claims shall receive the Proposed Monthly Dividend to be shared, pro-rata, by the holders of all the Class 10-15 claims.

9.2     Any lien in favor of the holder of a Class 10 claim is extinguished and terminated.

## ARTICLE X – CLASSES 16 AND 17

10.1     The holders of any Class 16 and 17 claims shall not receive any dividend.

10.2     Any lien in favor of the holder of a Class 16 or Class 17 claim is extinguished and terminated.

## ARTICLE XI - EQUITY HOLDER - CLASS 18

This interest will receive no Plan distribution. This Class is impaired.  The holders of the

Equity Interests will retain their Equity Interests.

## **ARTICLE XII - PROVISIONS CONCERNING PLAN EXECUTION**

12.1.    The Debtor will serve as distribution agent of all payments under the Plan.

12.2.    The Plan is premised upon the Debtor's belief that the unsecured creditors will receive a greater percentage of their claims under the Plan than they would upon a forced liquidation of the business under Chapter 7 of the Bankruptcy Code.

13.3.    On Confirmation, all property of the estate shall be retained by the Debtor. Any other interests in the Debtor's property, if any, shall be retained by the holders thereof, free and clear of any claims, liens and encumbrances.

## **ARTICLE XIII - PROVISION FOR DISPUTED CLAIMS**

The Debtor may object to the allowance of any Claim within 30 days of the Confirmation Date, by filing an objection with the Court and serving a copy thereof on the holder of the Claim, in which event the Claim objected to will be treated as a Disputed Claim under the Plan. If/when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtor will make any payment of such Allowed Claim in accordance with and limited by the Plan.

## **ARTICLE XIV - CLAIMS AND DISTRIBUTION MATTERS**

14.1.    Any objection to a claim must be filed within 30 days after the Effective Date.  If no objection is filed, the claim will be an Allowed Claim as filed.  If no objection is filed to a filed claim, such claim shall be deemed to be an Allowed Claim as filed.

14.3.    Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court, pursuant to F. R. Bankr. P. 1007(b), or at such later address as may be of record with the Clerk of the Court.

14.4.   If any holder's distribution is returned as undeliverable, then such returned distribution shall be held by the Debtor subject to the Allowed Claim of such holder. Such returned distribution shall be distributed as follows: (a) if the Debtor is notified of such holder's then current address or the holder is otherwise found within 90 days after the distribution has been returned as undeliverable, then any returned distributions (without interest) shall be delivered to the holder; but (b) all returned distributions that remain unclaimed more than 90 days after the distribution has been returned as undeliverable shall revert to the Debtor free and clear of the Allowed Claim of such holder and no further distributions shall be made to the holder whose distribution was returned, provided that Debtor shall make inquiry of the post service if the holder has given the postal service an alternative mailing address.

14.5.   Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments in respect of any claim which at such date or time is disputed, unliquidated or contingent shall not be made until such claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly in accordance with the Plan, as if no objection had been filed to such claim. If any claim is not allowed on such date, a reserve for such claim shall be established and held until the claim is allowed or disallowed, whereupon the reserve shall be disbursed in accord with the Order of this Court.

## ARTICLE XV – ASSET ABANDONMENT

15.1   The Debtor reserves the right to abandon its interest in any motor vehicle which this Court may determine to have a value higher than listed by the Debtor in the Vehicle Values if such value is not acceptable to the Debtor.  Any such abandonment shall take place within 25 days of the Effective Date and shall be evidenced by a Notice of Abandonment pursuant to Fed. R. Bankr. P. 6007.  In the event of such abandonment, there shall be no dividend to the holder of an Allowed

Secured Claim as a result of such vehicle and the amount of the value of such creditor's under-secured claim shall be increased.

15.2    Notwithstanding the provisions of Fed. R. Bankr. P. 6007, because there is no equity in any such potential asset, no party in interest shall have any right to object to an abandonment pursuant to this Plan.

## ARTICLE XVI – CLAIM ABANDONMENT

16.1    The Debtor has made an initial investigation into whether there may have been payments to Shastha which might be recoverable as a preference pursuant to 11 U.S.C. § 547. This investigation suggests that there may well have been some payments which may be recoverable; however, any judgment which this Court might award would not be beneficial to the Estate because: (a) any lien incident to any award this Court may make would be tertiary in priority to: (i) the consensual lien granted to Newtek incident to the 2017 loan transaction; and (ii) the judgment lien granted to Newtek incident to the 2019 litigation.  Therefore, the Debtor does not intend to pursue any such claim against Shastha; and (b) any benefit to the Estate would be outweighed by the costs incurred by the Debtor to obtain any judgment.

16.2    However, to the any creditor or party in interest may object to the action proposed immediately above, the Debtor proposes that it will, within such time as this Court may direct, commence an Adversary Proceeding against Shastha and prosecute such claim to a judgment. Thereafter, the Debtor will, pursuant to 11 U.S.C. § 363 propose to sell its rights in any such judgment through an auction to the highest bidder. After deduction of any administrative expenses incurred with respect to any such litigation and motion, the net proceeds of such sale shall be paid over to the holders of Class 10-14 claims.

## ARTICLE XVII - LIQUIDATION ANALYSIS

17.1    As of the Petition Date, there no assets which were not subject to perfected security interests.  Of the Debtor's assets, the sole assets whose value was not eclipsed by perfected security interests were 8 motor vehicles.   Prior to consideration of any tax lien in favor of the City, the aggregate value of these 8 vehicles was $100,250.  Based upon the assumption (as discussed in Note 3) that an average lien value of $1,019.66 attached to these 8 vehicles, the remaining equity which would have (without consideration of costs of administration) been available to distribute to unsecured creditors would be $92,071.72   The proposed dividend to unsecured creditors is $228,881.  Therefore, the Debtor submits that the liquidation test pursuant to 11 U.S.C. § 1129(a)(7)(A)(ii) is satisfied.

## ARTICLE XVIII - AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in the Plan, or as may be allowed by the Code, any term of the Plan may be amended and the observance of any term of the Plan may be waived (either generally or in a particular instance and either retroactively or prospectively) with the consent to such amendment or waiver by the holders of 51% of the amount of Allowed Claims affected by such amendment or waiver.

## ARTICLE XIX - EXECUTORY CONTRACTS

The Debtor's executory contracts are assumed.

## ARTICLE XX - EFFECT OF CONFIRMATION

20.1    Upon entry of the Order of Confirmation, the provisions of the Plan bind the Debtor and all Creditors and equity security holders, whether or not the Claim or interest of such Creditor or equity security holder is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

20.2     Except as otherwise provided in the Plan or the Order of Confirmation, the confirmation of the Plan vests all of the property of the estate in the Debtor free and clear of all Claims, liens, and interests of Creditors and equity security holders.

20.3     Effective upon entry of an Order of Confirmation, the rights of Newtek under the Cash Collateral Order shall be extinguished.

20.4     If this Plan is confirmed by consent, the Debtor shall receive a discharge incident to entry of an Order of Confirmation.  However, if this Plan is not confirmed by consent, the Debtor shall not receive a discharge until completion of all Plan payments.

20.5     Promptly upon demand by the Debtor, any creditor whose lien is extinguished by this Plan shall provide documents in proper form to effectuate a release of any such lien with any governmental authorities.

## ARTICLE XXI - RETENTION OF JURISDICTION

21.1     The Court shall retain jurisdiction in the Case until completion of the Plan to:

(a)     classify the Claim of any Creditor and re-examine Claims that were allowed for purposes of voting, and to determine such objections as may be filed to the Claims of Creditors. The failure by the Debtor to object to or examine any Claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine a Claim in whole or in part;

(b)     estimate contingent or unliquidated claims;

(c)     determine all causes of action, controversies, disputes, and conflicts arising prior to the Effective Date involving either the Debtor or its assets and any other party, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code;

(d)     determine adversary proceedings arising under the Code seeking to avoid preferences, fraudulent conveyances, or otherwise to recover money or property for the estate (and

the Debtor retains the exclusive right to file such avoidance or turnover actions under the Code

until 90 days after the Effective Date but not thereafter. The Debtor's failure to reference any such

actions in the Plan shall not be deemed to be a waiver of the Debtor's right to pursue such actions;

(e)     remedy any defect, to cure any omission, or to reconcile any inconsistency

in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of

the Plan; and to interpret and enforce the terms and conditions of the Plan, including any

agreement for satisfaction of an Allowed Claim;

(f)     enforce any post-petition agreements to which the Debtor is a party;

(g)     determine the validity, extent, and/or priority of any liens against the

Debtor's assets;

(h)     determine under the Code the amount of any tax, fine, or penalty relating to

a tax, or any addition to a tax;

(i)     fix compensation of Professional Persons and other Administrative Claims;

(ii)    modify the Plan after confirmation to the extent authorized by the Code;

(k)     enter an order compelling any creditor to provide a lien release as

contemplated by this Plan;

(l)     enter a discharge of the Debtor; and

(m)     enter a Final Order closing the Case.

21.2    Except as provided in this Article, the Court's jurisdiction shall terminate as to

the Case on the Effective Date.

## **ARTICLE XXII - STAUTORY REMEDY**

22.1    Pursuant to 11 U.S.C. § 1191(c)(3)(B), the holder of any Allowed Claim (other than

the holder of an Allowed Secured Claim) may, if the Debtor has failed to make any payment

within 14 days of a due date, to issue a notice to the Debtor identifying any late payments and

demanding that such payments be made (a "Allowed Claim Default Notice").   Any such Default

Notice must be issued in writing to the Debtor at the Debtor's address of record with this Court

and a copy of such notice must be: (i) served upon counsel for the Debtor at his address of record

with the Court; and (ii) filed electronically with the Clerk of the Court through the Court's ECF

System.  If the Debtor shall not, within 28 days of such Allowed Claim Default Notice, have made

any payment property demanded to be made pursuant to such Allowed Claim Default Notice, then

any dividend to which the holder of a Class 15 claim would be entitled to receive shall be

suspended and deferred and the amount of such dividend shall be paid over to the party having

issued a Allowed Claim Default Notice.  In the event more than one person may issue a Allowed

Claim Default Notice, then all such persons shall share in any Class 15 dividend pro-rata until any

deficiency shall have been cured.

22.2    Pursuant to 11 U.S.C. § 1191(c)(3)(B), the holder of any Allowed Secured Claim

may, if the Debtor has failed to make any payment within 14 days of a due date, to issue a notice to

the Debtor identifying any late payments and demanding that such payments be made (a "Allowed

Secured Claim Default Notice").   Any such Allowed Secured Claim Default Notice must be

issued in writing to the Debtor at the Debtor's address of record with this Court and a copy of such

notice must be: (i) served upon counsel for the Debtor at his address of record with the Court; and

(ii) filed electronically with the Clerk of the Court through the Court's ECF System.  If the Debtor

shall not, within 28 days of such Allowed Secured Claim Default Notice, have made any payment

property demanded to be made pursuant to such Allowed Secured Default Notice, then such

creditor shall be free to pursue any non-bankruptcy remedies available to it.

## ARTICLE XXIII - MISCELLANEOUS

23.1    All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile, or mailed by registered or certified mail with return receipt requested as follows: (a) if to the Debtor, then to John P. Forest, II, 11350 Random Hills Road, Suite 700, Fairfax, VA 22030; (b) if to a holder of an Allowed Claim, then at the address set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court pursuant to Fed R. Bankr. P. 1007(b); and (c) notice shall be deemed given when received.  Any Person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the Person to be charged with the knowledge of such change.

23.2    The Debtor reserves the right to revoke and withdraw the Plan prior to entry of an Order of Confirmation. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor.

23.3    Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by any Creditor of any action with respect to the Plan shall (a) be or be deemed to be an admission against interest; and (b) until the Confirmation Date, be or be deemed to be a waiver of any rights which any Creditor may have against either the Debtor, its property, or any other Creditor of the Debtor; and until the Confirmation Date all such rights are specifically reserved.

23.4    All administrative claims must be filed within 60 days of the Date of Confirmation; provided, however that any administrative claim filed incident to any steps taken

pursuant to Section 16.2 of this Plan may be filed within 60 days of entry of a final order incident

to any sale contemplated by Section 16.2 of this Plan.

23.5    In the event an objection is filed to any claim, no distributions shall be made on

account of such claim until such claim becomes an Allowed Claim.

23.6    After payment of all dividends owed to the holder of an Allowed Secured Claim,

each such creditor shall execute and deliver all appropriate documents reasonably required to

release any security interest held by each such creditor in any assets of the Debtor.

23.7    No later than 30 days after the Effective Date, Advantage Funding shall execute and

deliver, in proper form, a release of any liens which Advantage Funding may have claimed against

any of the Debtor's vehicles.

23.8    Ally shall not receive any payment as an Allowed Secured Claim from the Debtor

under this Plan incident to any loan extended by Ally to the Debtor Jayaraman.  The collateral for

this loan is a 2017 Porsche Macan. However, the amount of this debt (embodied in Proof of Claim

No. 4) shall be paid as a general unsecured Class 12 claim.  Effective upon confirmation of this

Plan, the Debtor shall transfer its interest in the 2017 Porsche Macan to Jayaraman.  The rights of

Ally with respect to Jayaraman, who is a co-maker of the note payable to Ally, remain in full force

and effect and are neither limited, adjusted, nor impaired by this Plan.

23.9    In the event of any conflict between a value stated in the Plan and the value set forth

in and Exhibit to the Plan, the value set forth in the Exhibit shall control.

Respectfully submitted by:


*/s/ John P. Forest, II*
John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
Telephone: (703) 691-4940
Email: john@forestlawfirm.com
*Counsel for the Debtor*


## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2021, that I have electronically filed this PLAN OF

REORGANIZATION which provides electronic notice of such filing to all parties who receive

notice in this matter; and that I have mailed a true and correct copy of the foregoing pleading to

those parties as identified on the Mailing Matrix attached hereto.


*/s/ John P. Forest, II*
John P. Forest, II