John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
(703) 691-4940
*Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____
                                      )

IN RE RAMJAY INC                   )  Docket Number 21-10809-BFK
                                       )  Chapter 11 (Subchapter V)

     Debtor in Possession         )
_____  )

**AMENDED PLAN OF REORGANIZATION**

The Debtor proposes the following Amended Plan of Reorganization (the "<u>Plan</u>")

pursuant to Subchapter V of Chapter 11 of Title 11 of the United States Code (the "<u>Code</u>"):

**ARTICLE I - DEFINITIONS**

1.01    "<u>Administrative Claim</u>" means a Claim that has been allowed with administrative

priority under § 503 of the Code.

1.02    "<u>Allowed Claim</u>" means a Claim:

(a)    If no objection to the allowance has been made within any applicable

period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan: (i) in the

amount for which either a proof of claim has been filed with the Court within the applicable

period of limitation fixed by Fed. R. Bankr. P. 3003, the Rules, or an order of the Court; or (ii) in

the amount scheduled in the list of creditors prepared and filed with the Court pursuant to Fed. R.

Bankr. P. 1007(b), as such may be amended pursuant to Fed. R. Bankr.P. 1009 prior to the

Confirmation Date, and not listed therein as disputed, contingent, or unliquidated.

(b)    If an objection to the allowance thereof has been interposed, within any

applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan, in

[1]

the amount determined by the Court by a Final Order allowing the Claim.

1.03    "Allowed Secured Claim" means an Allowed Claim that is secured by a lien on property in which the Debtor's estate has an interest, to the extent of the value of such property that is available to such claimant.

1.04    "Allowed Unsecured Claim" means an Allowed Claim to the extent that it is not an Allowed Secured Claim.

1.05    "Applicable Rate" means the interest rate of 4.5% which will be applied to amortize any Allowed Secured Claim over the commitment period.

1.06    "Budget" shall mean the Debtor's Budget attached as Exhibit 1

1.07    "Cash Collateral Order" shall mean the Interim Order Authorizing Use of Cash Collateral, Providing  Adequate Protection Under 11 U.S.C.§§ 105, 362, and 363 and Setting Final Hearing Thereon; [Docket Entry No. 75] as well as the Final Order Authorizing Use of Cash Collateral, Providing Adequate Protection Under 11 U.S.C.§§ 105, 362, and 363 [Docket Entry No. 96] any other order entered (subsequent to the date of this Plan) incident to the Debtor's Motion to Authorize Use of Cash Collateral and Granting Adequate Protection [Docket Entry No. 46] (the "Motion") .

1.8    "Claim" means any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor that existed on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.9    "Confirmation Date" means the last date upon which the order of confirmation has been both entered by the Court and docketed by the Clerk.

1.10    "Court" means the U.S. Bankruptcy Court for the Eastern District of Virginia.

1.11    "Creditor" means a person holding a claim.

1.12    "Disputed Claim" shall have the meaning set forth in Article XIV of this Plan,

and shall also include (without limitation) the claim of Jayasekar Jayaraman ("Jayaraman") as set

forth in the Objection to Claim [Docket Entry No. 92].

1.12    "Distribution Agent" shall mean Scott W. Miller as Subchapter V Trustee.

1.14    "Effective Date" means 30 days from the date upon which the Order of

Confirmation of this or any amended plan of reorganization filed by the Debtor is entered by the

Court assuming that no appeal from said Order of Confirmation is filed. If there is an appeal, the

Effective Date will be 30 days after the date on which all appeals have been withdrawn,

dismissed or otherwise completed, or 30 days after any such order becomes dispositive of said

appeal and confirming a plan of the Debtor becomes final and subject to no further appeal.

1.15    "Equity Interest" means the equity interests of Jayaraman and Deepthi Jayasekar

("Jayasekar") in the Debtor.

1.16    "Final Order" means an order of a court as to which any appeal that has been or

may be taken has been resolved or as to which the time for appeal, or further appeal, or petition

for a writ of certiorari, has expired.

1.17    "Order of Confirmation" means the order entered by the Court confirming the

Plan.

1.18    "Person" includes an individual, corporation, partnership, joint venture, trust,

estate, unincorporated organization, or a government or any agency or political subdivision.

1.19    "Petition Date" means the date the Debtor filed its petition for relief.

1.20    "Post-petition Creditor" means a person holding a claim, except that it has

accrued after the Petition Date, but who has not received allowance of such Claim with

administrative priority under § 503 of the Code.

1.21    "<u>Professional Person</u>" means a Person employed as a professional in the Case.

1.22    "<u>Preference Action</u>" shall mean the adversary proceeding styled as *Ramjay, Inc. v. Shasthra USA, Inc*., U.S. Bankruptcy Court, E.D. Va., Alex. Div. Docket No. 21-1051.

1.23    "<u>Pre-Petition Contract</u>" within the context of Article XXII, shall mean any agreement between the Debtor and any creditor and shall include the rights (if any) of any creditor in any security agreement, financing statement, and certificates of title.

1.24    "<u>Projections</u>" shall mean the Debtor's Budget, attached as <u>Exhibit 1</u>.

1.25    "<u>Proposed Dividend</u>" shall mean the amount referenced in the Budget that will be paid each quarter by the Debtor to the Distribution Agent in the line item under the Disbursements column marked "Dividend," and represents the total of the three monthly payments being paid by the Debtor comprising such amount.  This amount is subject to reduction in the event administrative expenses, approved by the Court, exceed the amount set forth in the Budget or other variables such as the amount of Newtek's Allowed Secured Claim

1.26    "<u>Retained Vehicles</u>" mean those 5 vehicles of the Debtor described on page 6 of the Motion.

1.27    "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure, as supplemented and/or modified by the local bankruptcy rules as adopted by the Court as amended from time to time.

1.28    "<u>Trustee</u>" shall mean the person serving as Subchapter V Trustee, presently Scott W. Miller.

1.29    "<u>Vehicle Values</u>" means the value of each motor vehicle, as of the date of this Plan, as set forth on <u>Exhibit 2</u>.

## <u>ARTICLE II – DISCLOSURES</u>

2.1    The purpose of this disclosure is to provide parties with a brief history of the

business operations of the debtor. This disclosure should provide parties with the information

required under 11 U.S.C. § 1190. This disclosure sets forth certain information regarding the

debtors' assets, pre-petition history, significant events that have occurred in this case, and other

sections of this Plan describe the debtor's anticipated financial affairs after confirmation.

Creditors and other parties in interest are advised to read the Plan carefully and obtain the advice

of independent legal counsel if desired.

      2.2     All parties are advised and encouraged to read this Plan in their entirety before

voting to accept or reject the Plan. Statements made in this disclosure are qualified entirely by

reference to the Plan and other Exhibits served with the Plan. This disclosure contains summaries

of certain provisions of certain valuations and other financial information, and certain events

related to the Debtor's Chapter 11 case. Although the debtor believes that this information is

accurate, such summaries are qualified to the extent that they are summaries and do not set forth

the entire text of documents referred to. The information in this disclosure has been provided by

the Debtor and its agents in good faith after a reasonable investigation, but the debtor is not able

to warrant or represent that the information contained herein, including the financial information,

is without any inadvertent inaccuracy or omission.  Certain information contained in this

disclosure and other portions of this Plan are, by their very nature speculative, containing

estimates, assumptions and projections that may not be borne out by future events. Except as

specifically noted in this Plan, this disclosure does not reflect any events or conditions that may

occur after this date, nor has the information contained herein been audited. The information

contained in this disclosure has been provided by the debtor, its attorney, and their agents.

      2.3     The Debtor was organized as a Virginia corporation in 2003 to provide shuttle,

bus and other transportation in the Washington Metropolitan area.  Prior to the SARS-Cov-2

virus, the Debtor transported around 4500 people a day using a fleet of 40 vehicles with 60

employees.

2.4     In 2017, the Debtor obtained a loan (backed by the Small Business Administration) from Newtek Small Business Finance, LLC ("<u>Newtek</u>").  The obligations under this loan were guaranteed by Shasthra, USA, Inc. ("<u>Shasthra</u>") and the principals of the Debtor (Jayaraman and Jayasekar).  Incident to this loan, Newtek obtained a first priority lien upon all assets of the Debtor, including 21 motor vehicles (16 of which have been surrendered to Newtek).  Pursuant to the Amended Proof of Claim filed by Newtek (but subject to a pending claim objection), there is a claimed balance due of $1,677,409.02.

2.5     In 2019, Newtek commenced a civil action for damages against the Debtor, the Debtor's principals, and Shasthra.  At the same time, the Newtek commenced a second civil action in detinue against the Debtor for possession of certain collateral.  In May 2021, prior to trial, the Debtor filed a petition for relief and Jayaraman also filed a petition for relief. Thereafter, Newtek obtained a judgment against Jayasekar and Shasthra.

2.6     The Debtor's pre-petition management was provided by Jayaraman and such management shall continue.

2.7     The principal circumstances and events which gave rise to this bankruptcy case was the reaction to the SARS-Cov-2 pandemic and the attendant diminution of commercial activity.  The Debtor's business activities were sharpy curtailed and only recently have begun to recover (and even then, delicately so owing to a cautious and deliberate resumption of commercial activity); however, any nascent recovery is subject to reactions by the business community to the "Delta" variant of the SARS-Cov-2 pandemic.  Notwithstanding the foregoing, the Debtor submits that any recovery in its industry will be materially less so than the general business environment due to the perhaps permanent "work-from-home" circumstances.

2.8     **Important information concerning the Court's consideration of the Plan is**

[6]

**set forth in the Court's Order setting Confirmation Hearing [Docket Entry No. 109**], a copy

of which is attached to this Plan as <u>Exhibit 3</u>.

2.9     A sample ballot which may be submitted is attached to this Plan as <u>Exhibit 4</u>.

## ARTICLE III - DESCRIPTION OF PLAN

3.1     This is a reorganizing Plan to be funded by the operations of the Debtor.   The

Debtor's projections of its monthly income and expenses as well as the Debtor's projections of

dividends under this Plan are set forth in <u>Exhibit 1</u>.  The Debtor will make monthly payments to

the Distribution Agent which total all the quarterly Proposed Dividend payments, and the other

payments to creditors paid each quarter, as set forth in this Plan and in the Budget in satisfaction

of the Debtor's obligations under this Plan.  For example, based upon the Budget, the total

payments owed by the Debtor to the Distribution Agent for the first quarter would be the total of

$61,307.67 in three equal, monthly installments.

3.2     In addition to the payment each month to the Distribution Agent as provided for

in <u>Section 3.1</u>, any net proceeds recovered in connection with the Preference Action (meaning

any gross proceeds received less any administrative expenses incurred in prosecution of the

Preference Action) will be applied by the Distribution Agent, in addition to the Proposed

Dividend, toward the satisfaction of the holders of allowed priority Claims and general

unsecured Claims under this Plan.

## ARTICLE IV - CRAMDOWN

The Debtor invokes the "cramdown" entitlement under 11 U.S.C. §1129(b) and 11

U.S.C. §§ 1191(b), (c), and (e) of the Code. That is, as long as the plan does not discriminate

unfairly, and is fair and equitable with respect to any class of claims or interest that is impaired

and has not accepted the Plan, and so long as the plan provides that all of the projected

disposable income of the debtor to be received in during the commitment period, beginning on

the date that the first payment is due under the plan will be applied to make payments under the

plan; or the value of the property to be distributed under the plan during the commitment period

is not less than the projected disposable income of the debtor, the Court may confirm the Plan.

## ARTICLE V - CLASSIFICATION OF CLAIMS AND INTERESTS

5.1.    All Claims, defined under §101(4) of the Code and all interests in equity

securities as defined in §101(15) of the Code and are classified as follows:

5.2.    Class 1: Allowed Administrative Claims. The Plan contemplates paying any

allowed fees to counsel for the Debtor (John P. Forest, II) and any allowed fees to the Trustee

(Scott W. Miller) in full on the Effective Date.   The allowed Class 1 Claims shall include any

services rendered after any confirmation of this Plan by counsel to the Debtor incident to the

Preference Action and shall also include any services rendered by the Trustee as Distribution

Agent and as successor-in-interest to the rights of the Debtor in the Preference Action at the

hourly rate approved by the Court.

5.3.    Class 2:

(a)      the priority component of the allowed Claim of the Internal Revenue

Service (the "IRS") (Proof of Claim No. 10) of $797.41;

(b)      the allowed priority wage Claim of Jayaraman (Proof of Claim No. 21) but

only up to the statutory limit as set forth in 11 U.S.C. § 507(a)(4);

(c)      the allowed priority Claim of the City of Alexandria as set forth in Proof

of Claim No. 24; and

(d)      in the event the Virginia Department of Taxation may file a Proof of

Claim that is allowed, then any such priority amount.

5.4.    Class 3: the Allowed Secured Claim of Newtek.

5.5     Class 4.1: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 1).[1]

5.6     Class 4.2: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 2).[2]

5.7     Class 4.3: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 3).[3]

5.8     Class 4.4: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 5).[4]

5.9     Class 4.5: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 6).[5]

5.7     Class 4.6: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 7).[6]

5.8     Class 4.7: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 8).[7]

5.9     Class 4.8: the Allowed Secured Claim of Ally Financial (Proof of Claim No. 9).[8]

5.10     Class 5.1: the Allowed Secured Claim of Huntington National Bank (sometimes referred to as TCF Finance) ("Huntington") with respect to the balance owed to Huntington National Bank incident to Huntington having financed the purchase by the Debtor of a Ford E-350 on or about December 8, 2017.

5.11     Class 5.2: the Allowed Secured Claim of Huntington with respect to the balance owed to Huntington incident to Huntington having financed the purchase by the Debtor of a Ford E-450 on or about February 8, 2018.

5.11     Class 6: the Allowed Secured Claim of S&P Financial Services.

---

[1]  The vehicle which serves as collateral for this Claim is identified as "Ally 5" on Exhibit 2.

[2]  The vehicle which serves as collateral for this Claim is identified as "Ally 6" on Exhibit 2.

[3]  The vehicle which serves as collateral for this Claim is identified as "Ally 7" on Exhibit 2.

[4]  The vehicle which serves as collateral for this Claim is identified as "Ally 8" on Exhibit 2.

[5]  The vehicle which serves as collateral for this Claim is identified as "Ally 4" on Exhibit 2.

[6]  The vehicle which serves as collateral for this Claim is identified as "Ally 1" on Exhibit 2.

[7]  The vehicle which serves as collateral for this Claim is identified as "Ally 3" on Exhibit 2.

[8]   The vehicle which serves as collateral for this Claim is identified as "Ally 2" on Exhibit 2.

5.12    Class 7: the Allowed Secured Claim of CIT Direct Capital.

5.13    Class 8: the Allowed Secured Claim of GM Financial.

5.14.   Class 9:

   (a)  the claim of U.S. Small Business Administration [Secured Claim 2.29];

   (b)  the claim of U.S. Small Business Administration [Secured Claim 2.28];

   (c)  the claim of Fundbox [Secured Claim 2.21];

   (d)  the claim of Accel Capital [Secured Claim 2.1]; and

   (e)  the claim of MBFMPO [Secured Claim 2.23]; and

While each of these creditors had a perfected security interest, after consideration of the superior, perfected security interest of Newtek and the value of the collateral in which any of these creditors had a perfected security interest, each of these claims is entirely unsecured.

5.15    Class 10:  all allowed general unsecured Claims, including any under-secured portion of any Claim which may not represent an Allowed Secured Claim and that part of the claim of the IRS which does not represent a priority claim; but excluding, the holders of any Class 11 or 12 Claims.

5.16    Class 11: the allowed general unsecured Claims of Jayaraman (Proof of Claim No. 23), the portion of Proof of Claim No. 21 which is not a priority Claim, and the general unsecured Claim of Jayasekar (Proof of Claim No. 22).

5.17    Class 12:  the claim of Advantage Funding, the claims of the Corporation Service Corporation [Secured Claims 2.15, 2.16, 2.17, 2.18, 2.19, and 2.20], and the claims of Power Up Lending Group.  These claims were scheduled as disputed.  Notice of the requirement to file a Proof of Claim was given incident to the Notice to Creditors.  *See* Docket Entry No. 31.  An additional notice was given as set forth in Docket Entry No. 43.  The claims bar date was July 13, 2021.  No proofs of claim were filed.

5.18    Class 13:  the Equity Interests.

## ARTICLE VI - ADMINISTRATIVE EXPENSES

6.1.    Allowed Administrative Claims [Class 1] shall be paid in full, on the latter of the

Confirmation Date or the date they are allowed by an Order of the Bankruptcy Court. The

payments contemplated by the Plan shall constitute full satisfaction of Allowed Administrative

Claims.  Administrative Claims include any post-petition, unpaid bills or charges incurred in the

ordinary course of business and the fees and expenses allowed to professionals employed upon

Court authority to render services to the Debtor during the course of this case.

6.2.    John P. Forest, II has been engaged and approved as a professional to represent

the Debtor during the pendency of this bankruptcy case and Scott W. Miller has been appointed

to serve as Subchapter V Trustee.  Any fees for these persons are administrative claims payable

by the Debtor pursuant to the Plan.

6.3    To be compensated, all professionals must apply to the Court for compensation

andwill be paid the amount which the Court allows.

## ARTICLE VII – ALLOWED SECURED CLAIMS - CLASSES 3-8

7.1    Class 3 —Secured Claim of Newtek (impaired).  The Class 3 Claim consists of

the allowed secured Claim of Newtek as reflected by a Note (the "Newtek Note") dated January

17, 2017 from the Debtor in the original principal amount of $1,740,000.00 and secured by a

Security Agreement (the "Newtek Security Agreement") from the Debtor dated January 17,

2017, creating a properly perfected first priority security interest and blanket lien (the "Newtek

First Priority Lien") on all the pre-petition presently owned and after acquired personal property

and fixtures of the Debtor and all such related product and proceeds, other than with respect to

the Non-Newtek Vehicles, as such term is defined in the Cash Collateral Order (collectively, the

"Newtek Pre-Petition Collateral").  In connection with the Cash Collateral Order, Newtek's First

[11]

Priority Lien was reaffirmed and Newtek was granted fully perfected first position post-petition replacement liens and security interests that secures Newtek's allowed secured Claim (the "Replacement Liens") in and on all the presently owned and after acquired personal property of the Debtor and all related product and proceeds, other than with respect to the Non-Newtek Vehicles, all as more fully set forth in the Cash Collateral Order (the "Newtek Post-Petition Collateral," and together with the Newtek Pre-Petition Collateral, collectively, the "Newtek Collateral").  In addition, the Cash Collateral Order granted Newtek as adequate protection with respect to any diminution in the value of Newtek's interest in the Newtek Pre-Petition Collateral and the Newtek Cash Collateral, as such term is defined in the Cash Collateral Order, (the "Collateral Diminution Adequate Protection"): (i) a super priority Claim as provided for under section 507(b) of the Code; and (ii) Unencumbered Collateral Liens, as such term is defined in the Cash Collateral Order, in and against any recovery actions arising under chapter 5 of the Code and the vehicles identified in Exhibit 3[9] of such order.

In connection with its Class 3 Claim, Newtek shall maintain an Allowed Secured Claim equal to the greater of $431,961.25 or $180,600.00, plus the value of the Newtek Cash Collateral as of the Effective Date, less, with respect to such greater amount, $7,500 for each Adequate Protection Payment, as such term is defined in the Cash Collateral Order, actually received by Newtek (the "Newtek Secured Claim").  The Newtek Secured Claim shall accrue interest at the rate of 4.5% per annum amortized over 20 quarterly installments to be paid by the Distribution Agent, with the first quarterly installment payment being due to Newtek on the 20th day of the third month after the Effective Date, with each payment being due on the 20th day of each third month thereafter.  By way of example, if the Newtek Secured Claim equals $431,961.25 and the

---

[9] Vehicle I.D. No. 1FDFE4FS7EDA56556 is subject to a prior first position lien for the benefit of CIT Direct and is therefore excluded to the extent of this lien.

Effective Date is any day in October, 2021, and there were no Adequate Protection Payments made to Newtek, then the first installment payment for this Allowed Secured Claim shall equal $24,239.64 and shall be due from the Distribution Agent on January 20, 2022.

Notwithstanding any other terms or provisions of this Plan, Newtek shall maintain and retain to the same extent and priority all of its liens and security interests granted to Newtek with respect to the Security Agreement and the Cash Collateral Order, with respect to the Newtek Collateral, including, without limitation, the Newtek First Priority Lien, the Replacement Liens and the Unencumbered Collateral Liens, all of which shall be governed and controlled by the terms and conditions of the Newtek Security Agreement and the Uniform Commercial Code, as adopted in the Commonwealth of Virginia, including, without limitation, all rights and remedies related thereto.  In addition, the Collateral Diminution Adequate Protection shall remain in full force and effect and notwithstanding any other term or provision of this Plan, Newtek shall be entitled to assert any super priority Claim (the "Newtek Super Priority Claim") arising therefrom for 60 days following Newtek's receipt of documentation consisting of bank statements and account receivable reports from the Debtor establishing the amount of the Newtek Cash Collateral as of the Effective Date, which information shall be provided to Newtek by the Debtor no later than 15 days following the Effective Date.  Notwithstanding any other term or provision of this Plan, until satisfied in full, any balance owed to Newtek incident to Newtek's Super Priority Claim shall be paid ahead of, and in place of, all other priority Claims of the Debtor on the same schedule provided in this Plan for the payment of allowed priority Claims.  No changes are being made to any of the Newtek loan documents consisting of the Newtek Note, the Newtek Security Agreement, the financing statements, and the certificates of title reflecting Newtek's liens, except as specifically provided for in this Section 7.1 of the Plan, and all these loan documents are hereby reaffirmed and shall remain in full force and effect.

[13]

7.2.    The amount of the Class 4.1 Allowed Secured Claim is $7,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).  **The amount of this dividend (as well as any dividend calculated in Sections 7.3 through 7.9) is calculated in accord with Section 23.8.**

7.3.    The amount of the Class 4.2 Allowed Secured Claim is $12,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.4     The amount of the Class 4.3 Allowed Secured Claim is $7,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.5     The amount of the Class 4.4 Allowed Secured Claim is $1,200 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.6     The amount of the Class 4.5 Allowed Secured Claim is $15,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.7     The amount of the Class 4.6 Allowed Secured Claim is $15,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor

[14]

at the Applicable Rate).

7.8      The amount of the Class 4.7 Allowed Secured Claim is $15,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.9      The amount of the Class 4.8 Allowed Secured Claim is $12,000 and is represents the Vehicle Value of the collateral securing this claim. Ally Financial will receive a dividend as set forth in the Budget (representing the amortized value of the collateral retained by the Debtor at the Applicable Rate).

7.10     The amount of the Class 5.1 Allowed Secured Claim is $7,000 and represents the Vehicle Value of the collateral securing this claim. Huntington will receive a dividend as set forth in the Budget (representing the amortized value of this claim at the Applicable Rate).

7.11     The amount of the Class 5.2 Allowed Secured Claim is $33,000 and represents the Vehicle Value of the collateral securing this claim. Huntington will receive a dividend as set forth in the Budget (representing the amortized value of this claim at the Applicable Rate).

7.12.    The amount of the Class 6 Allowed Secured Claim is $40,000 and represents the Vehicle Value of the collateral securing this claim. S&P Financial Services will receive a dividend as set forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.13.    The amount of the Class 7 Allowed Secured Claim is $20,000 and represents the Vehicle Value of the collateral securing this claim. CIT Direct Capital will receive a dividend as set forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.14.    The amount of the Class 8 Allowed Secured Claim is $45,000 and represents Vehicle Value of the collateral securing this claim. GM Financial will receive a dividend as set

[15]

forth in the Budget (representing the amortized value of the claim at the Applicable Rate).

7.15    Each lien securing the holder of a Class 3-8 Claim shall be reduced and modified down to the amount of the appropriate Allowed Secured Claim as of the Effective Date.

7.16    The holder of each Allowed Secured Claim in Classes 3-8 shall receive their distribution on the same schedule and terms as set forth in Section 12.2 of this Plan.

## ARTICLE VIII - PRIORITY CLAIMS - CLASS 2

The holders of any allowed Class 2 Claims shall receive a quarterly distribution from the Distribution Agent in the amount of the Proposed Dividend.  Each quarterly distribution shall be paid to allowed priority claimants on a pro rata basis on the same schedule and terms as set forth in Section 12.2 of this Plan until holders of allowed class 2 Claims have been paid in full.

## ARTICLE IX - UNSECURED CLAIMS - CLASSES 9-11

9.1    The holders of any allowed Class 9-11 Claims shall receive a quarterly distribution from the Distribution Agent in the amount of the Proposed Dividend.  Each quarterly distribution shall be paid to the holders of allowed general unsecured Claims on a pro rata basis on the same schedule and terms as set forth in Section 12.2 of this Plan beginning after the Class 2 allowed priority Claims have been satisfied.

9.2    Any lien in favor of the holder of an allowed Class 9 Claim on account of an under-secured general unsecured claim is extinguished and terminated to the extent of the unsecured amount of the Claim.

## ARTICLE X – CLASS 12

10.1    The holders of any Class 12 Claims shall not receive any dividend.

10.2    Any lien in favor of the holder of a Class 12 Claim is extinguished and terminated.

## ARTICLE XI - EQUITY HOLDER - CLASS 13

[16]

This interest will receive no Plan distribution. This Class is impaired.  The holders of the Equity Interests will retain their Equity Interests.

### **ARTICLE XII - PROVISIONS CONCERNING PLAN EXECUTION**

12.1.    Debtor Payments.  Beginning on the first business day of the first month after the Effective Date, and continuing on the same date of the next 59 months, the Debtor will make payment to the Distribution Agent of one-third of the Proposed Dividend, as well as one-third of the quarterly payments to be made to the holders of Allowed Secured Claims under this Plan and any other amounts that may be due under the Budget (the "Debtor Monthly Payments").  The total of the Debtor Monthly Payments to be made each quarter by the Debtor to the Distribution Agent equals the quarterly amount contained in the Budget in the line item marked "Total Plan Payments."  The purpose of the Debtor making the one-third payments referenced herein is for the Distribution Agent to have the total payments due each quarter to make all the quarterly installments required under this Plan.

12.2.    Distributions. Distributions under the Plan will be made by the Distribution Agent from the Debtor Monthly Payments on a quarterly basis.  The first installment of distributions will be made by the Distribution Agent on the 20th day of the third month after the Effective Date and thereafter on the same day on a quarterly basis.  In the event the Distribution Agent fails to receive a Debtor Monthly Payment within 5 business days of the due date, the Distribution Agent shall file with the Court a Notice of Default advising of the amount the Debtor failed to pay.  Within 30 days of the Distribution Agent making a distribution to creditors, the Distribution Agent will file with the Court a report stating the amount of the Debtor Monthly Payments that were received and the disbursement of such amounts made to each creditor on account of such payment, along with a cumulative total reflecting the total payments received from the Debtor and the total disbursements made to each creditor to date (the, "Distribution Agent Quarterly Report").  The Distribution

Agent Quarterly Report shall also identify the allowed amount of each creditor's Claim, as reduced by each payment made to such creditor.

12.3    Shortfall of Payments Received from the Debtor.

12.3.1  In the event of any shortfall in payments to the Distribution Agent, there shall be no dividend paid to the holder of any Class 11 claim, unless all other distributions owed can be made in full and only then may the holder of a Class 11 claim receive any partial distribution.

12.3.2  If there are not sufficient funds for the Distribution Agent to make a complete distribution to all creditors, but there are sufficient funds to make a full distribution to the holders of Allowed Secured Claims on account of their Allowed Secured Claims, the Distribution Agent shall make distribution to the holders of Allowed Secured Claims on account of their Allowed Secured Claims.  If there are remaining funds after such distribution, the Distribution Agent:

(a)    shall make distributions to the holder of the largest allowed priority claim, and then to then next largest allowed priority claim, and continuing in this order of priority until the Distribution Agent is no longer able to distribute any funds to holders of allowed priority claims; and

(b)    after all allowed priority claims have been paid, then the Distribution Agent shall make distributions to the holder of the largest allowed general unsecured claim (as if a complete payment had been received by the Distribution Agent), and then to the next largest allowed general unsecured claim (on the same basis), and continuing in this order of priority until the Distribution Agent is no longer able to distribute any funds to holders of allowed general unsecured claims.

12.3.3  In the event there are not sufficient funds for the Distribution Agent to make

[18]

a complete distribution to all creditors on account of their Allowed Claims as of the date the Distribution Agent is scheduled to make a distribution, but there are not sufficient funds for the Distribution Agent to make a full distribution to all the holders of Allowed Secured Claims on account of their Allowed Secured Claims:

(a)     The Disbursing Agent shall make payment to Newtek on account of its Allowed Secured Claim to the extent of available funds; and

(b)     The Debtor may within 5 days of any Default Notice, direct, by written notice to the Distribution Agent, that the Distribution Agent thereafter disburse any available funds to satisfy a dividend for the holders of such Allowed Secured Claims as the Debtor may direct; however

(c)     if the Debtor has not made a timely election contemplated by Section 12.3.3(b), then the Distribution Agent shall make distributions to the holders of Allowed Secured Claims on account of their Allowed Secured Claims by making distributions to the holder of the largest Allowed Secured Claim (as if a complete payment had been received by the Distribution Agent), and then to the holder of the next largest Allowed Secured Claim (on the same basis), and continuing in this order of priority until the Distribution Agent is no longer able to distribute any funds the Distribution Agent has received.

12.3.4  **If there has been a deficiency in funds received by the Distribution Agent in any quarter, the Distribution Agent shall not thereafter cure any deficiency by application of funds received from the Debtor from any subsequent monthly installments. Stated alternatively, no funds received by the Distribution Agent in any quarter may be applied to satisfy any shortfall from a prior quarter.**

12.3.5  To make up any shortfall of funds owed to the Distribution Agent, the Debtor must deliver funds to the Distribution Agent in the form of a cashier's check.

## ARTICLE XIII - PROVISION FOR DISPUTED CLAIMS

Any party may object to the allowance of any Claim within 30 days after the Effective Date by filing an objection with the Court and serving a copy on the holder of the Claim, in which event the Claim objected to will be treated as a Disputed Claim under the Plan. If/when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Disbursing Agent will make any payment of such Allowed Claim from the reserve as provided in Section 14.5 and in accordance with and limited by the Plan.

## ARTICLE XIV - CLAIMS AND DISTRIBUTION MATTERS

14.1.    Any objection to a claim must be filed within 30 days after the Effective Date.  If no objection is filed, such claim shall be deemed to be an Allowed Claim as filed.

14.3.    Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court, pursuant to F. R. Bankr. P. 1007(b), or at such later address as may be of record with the Clerk of the Court.

14.4.    If any holder's distribution is returned as undeliverable, then such returned distribution shall be held by the Distribution Agent subject to the Allowed Claim of such holder. Such returned distribution shall be distributed as follows: (a) if the Distribution Agent  is notified of such holder's then current address or the holder is otherwise found within 90 days after the distribution has been returned as undeliverable, then any returned distributions (without interest) shall be delivered to the holder; but (b) all returned distributions that remain unclaimed more than 90 days after the distribution has been returned as undeliverable shall revert to the Debtor free and clear of the Allowed Claim of such holder and no further distributions shall be made to the holder whose distribution was returned, provided that Debtor shall make inquiry of the post service if the holder has given the postal service an alternative mailing address.

14.5.    Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments in respect of any claim which at such date or time is disputed, unliquidated or contingent shall not be made until such claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly in accordance with the Plan, as if no objection had been filed to such claim. If any claim is not allowed on such date, a reserve for such claim shall be established and held until the claim is allowed or disallowed, whereupon the reserve shall be disbursed in accord with the Order of this Court.

## ARTICLE XV – ASSET ABANDONMENT

15.1    The Debtor reserves the right to abandon its interest in any motor vehicle which this Court may determine to have a value higher than listed by the Debtor in the Vehicle Values if such value is not acceptable to the Debtor.  Any such abandonment shall take place within 25 days of the Effective Date and shall be evidenced by a Notice of Abandonment pursuant to Fed. R. Bankr. P. 6007.  In the event of such abandonment, there shall be no dividend to the holder of an Allowed Secured Claim as a result of such vehicle and the amount of the value of such creditor's under-secured claim shall be increased.

15.2    Notwithstanding the provisions of Fed. R. Bankr. P. 6007, because there is no equity in any such potential asset, no party in interest shall have any right to object to an abandonment pursuant to this Plan.

## ARTICLE XVI

There is no text for Article XVI.

## ARTICLE XVII - LIQUIDATION ANALYSIS

The Debtor's proposed Liquidation Analysis is attached as Exhibit 5.  Based upon the information set forth in this Exhibit, the Debtor submits that the liquidation test pursuant to 11 U.S.C. § 1129(a)(7)(A)(ii) is satisfied.

## ARTICLE XVIII - AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in the Plan, or as may be allowed by the Code, any term of the Plan may be amended and the observance of any term of the Plan may be waived (either generally or in a particular instance and either retroactively or prospectively) with the consent to such amendment or waiver by the holders of 51% of the amount of Allowed Claims affected by such amendment or waiver.

## ARTICLE XIX - EXECUTORY CONTRACTS

The Debtor's executory contracts are assumed.

## ARTICLE XX - EFFECT OF CONFIRMATION

20.1    Upon entry of the Order of Confirmation, the provisions of the Plan bind the Debtor and all Creditors and equity security holders, whether or not the Claim or interest of such Creditor or equity security holder is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

20.2    Except as otherwise provided in the Plan or the Order of Confirmation, the confirmation of the Plan vests all of the property of the estate in the Debtor free and clear of all Claims, liens, and interests of Creditors and equity security holders; provided, however, that such vesting shall be subject to the rights of holders of all Allowed Secured Claims and the rights of Newtek incident to its Collateral Diminution Adequate Protection rights.

20.3    The Debtor shall not receive a discharge until completion of all Plan payments.

20.4    On the Effective Date, the Trustee shall succeed to the interests of the Debtor in the Preference Action. The Debtor shall cooperate with the Trustee to provide for a proper substitution of parties in the Preference Action.

20.5    Promptly upon demand by the Debtor, any creditor whose lien is extinguished by this Plan shall provide documents in proper form to effectuate a release of any such lien with any

governmental authorities.

## <u>ARTICLE XXI - RETENTION OF JURISDICTION</u>

21.1    The Court shall retain jurisdiction in the Case until completion of the Plan to:

(a)    classify the Claim of any Creditor and re-examine Claims that were allowed for purposes of voting, and to determine such objections as may be filed to the Claims of Creditors. The failure by the Debtor to object to or examine any Claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine a Claim in whole or in part;

(b)    estimate contingent or unliquidated claims;

(c)    determine all causes of action, controversies, disputes, and conflicts arising prior to the Effective Date involving either the Debtor or its assets and any other party, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code;

(d)    determine adversary proceedings arising under the Code seeking to avoid preferences, fraudulent conveyances, or otherwise to recover money or property for the estate (and the Debtor retains the exclusive right to file such avoidance or turnover actions under the Code until 90 days after the Effective Date but not thereafter. The Debtor's failure to reference any such actions in the Plan shall not be deemed to be a waiver of the Debtor's right to pursue such actions;

(e)    remedy any defect, to cure any omission, or to reconcile any inconsistency in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan; and to interpret and enforce the terms and conditions of the Plan, including any agreement for satisfaction of an Allowed Claim;

(f)    enforce any post-petition agreements to which the Debtor is a party;

(g)    determine the validity, extent, and/or priority of any liens against the Debtor's assets;

(h)    determine under the Code the amount of any tax, fine, or penalty relating to

a tax, or any addition to a tax;

> (i)      fix compensation of Professional Persons and other Administrative Claims;

> (ii)     modify the Plan after confirmation to the extent authorized by the Code;

> (k)      enter an order compelling any creditor to provide a lien release as

contemplated by this Plan;

> (l)      enter a discharge of the Debtor; and

> (m)     enter a Final Order closing the Case.

21.2    Except as provided in this Article, the Court's jurisdiction shall terminate as to the Case on the Effective Date.

## ARTICLE XXII - STAUTORY REMEDY

22.1    <u>General</u>.   The following remedies are provided pursuant to 11 U.S.C. § 1191(c)(3)(B) and shall be the exclusive remedies to any creditor.  However, in the event any creditor may object, then the Debtor reserves the right to sever this <u>Article XXII</u> from the Plan in its entirety and the remedies available to any creditor shall be as provided by applicable law and the creditor may foreclose on any collateral securing its Allowed Secured Claim and any creditor holding an unsecured claim may pursue and obtain a judgment to the extent of any allowed unsecured Claim.

22.2    <u>Allowed Secured Claims</u>

22.2.1  In the event the holder of an Allowed Secured Claim shall not have received a full payment from the Distribution Agent because of a shortfall in funds received by the Distribution Agent from the Debtor, the holder of the Allowed Secured Claim may treat the failure to have received such payment from the Distribution Agent as a failure of the Debtor to have made a timely payment under the Pre-Petition Contract with the Debtor.  Any such holder of an Allowed Secured Claim may then exercise any rights and remedies available to it as if the Debtor had failed

to comply with its payment obligation under any Pre-petition Contract with the Debtor for which the holder of the Allowed Secured Claim did not receive a timely payment.  To the extent any holder of an Allowed Secured Claim may seek to give any notice(s) incident to its exercise of any rights under this Section 22.2.1, then any such notice(s) shall be given to the Debtor: (i) in accord with any Pre-petition Contract (to the extent that there may be an entitlement to notice in such Pre-petition Contract); (ii) at its address of record in this case; and (iii) a copy of any such notice shall be uploaded to the Court's ECF System.

22.2.2  The Debtor shall have the right, exercisable not more than once during any one-year period, to cure any deficiency owed to the holder of an Allowed Secured Claim within the period set forth and upon the terms and conditions set forth in the Debtor's Pre-petition Contract. To the extent there are no cure rights within any Pre-petition Contract, the Debtor shall have the right, exercisable not more than once during any one-year period, to cure any deficiency owed to the holder of an Allowed Secured Claim within 10 days after notice from the holder of an Allowed Secured Claim (under Section 22.2.1).

22.2.3  In the event the holder of an Allowed Secured Claim shall have exercised its right to take possession of any collateral and dispose of the collateral, the holder of such Allowed Secured Claim shall be entitled to pursue any deficiency claim against the Debtor (based upon the difference between the then owed amount of any Allowed Secured Claim and the net proceeds received from any disposition) in accordance with applicable law and any deficiency balance shall accrue interest at the higher of: (i) the Pre-petition Contract interest rate; or (ii) 9%.

22.2.4  The failure of the holder of an Allowed Secured Claim to receive any dividend owed on account of any unsecured Claim shall not entitle the holder of the Allowed Secured Claim to exercise any rights or remedies set forth in Sections 22.2.1 through 22.2.3.  Any rights incident to any failure to receive any such payment shall be governed by Section 22.3.

[25]

22.3    <u>Unsecured Claims</u>

22.3.1  In the event the holder of an allowed unsecured Claim shall not have received a dividend from the Distribution Agent because of a shortfall in funds received by the Distribution Agent from the Debtor, the holder of such allowed unsecured Claim shall be entitled to pursue a judgment in any non-bankruptcy forum against the Debtor for the Expected Balance Due of any dividend (defined in <u>Section 22.3.2</u>) and interest shall accrue upon such Expected Balance Due at the higher of: (i) the Pre-petition Contract interest rate; or (ii) 9%.

22.3.2  As used in <u>Section 22.3.1</u> "<u>Expected Balance Due</u>" shall be 125% of the product of the face amount of the creditor's claim and the expected dividend rate from the Debtor's Liquidation Analysis, less the amount of any dividend received from the Distribution Agent.

22.4    <u>Post-Petition Payments</u>.  If the holder of any Claim shall not have received a payment due under the Plan, regardless of whether a judgment has been obtained, then, for purposes of determining the Debtor's entitlement to a discharge, any amounts owed to such creditor as a result of any Allowed Secured Claim or Allowed Claim shall be deducted from any determination as to whether the Debtor has made all required payments under the Plan.  Stated alternatively, any amount due a creditor under the Plan that is not paid as required by the Plan shall not be discharged as a result of any discharge the Debtor may receive in this case.

## ARTICLE XXIII - MISCELLANEOUS

23.1    All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile, or mailed by registered or certified mail with return receipt requested as follows: (a) if to the Debtor, then to John P. Forest, II, 11350 Random Hills Road, Suite 700, Fairfax, VA 22030; (b) if to a holder of an Allowed Claim, then at the address set forth in its allowed proof of claim or, if none, at such holder's address set forth in

the schedules prepared and filed with the Court pursuant to Fed R. Bankr. P. 1007(b); and (c) notice shall be deemed given when received.  Any Person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the Person to be charged with the knowledge of such change.

23.2     The Debtor reserves the right to revoke and withdraw the Plan prior to entry of an Order of Confirmation. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor.

23.3     Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by any Creditor of any action with respect to the Plan shall (a) be or be deemed to be an admission against interest; and (b) until the Confirmation Date, be or be deemed to be a waiver of any rights which any Creditor may have against either the Debtor, its property, or any other Creditor of the Debtor; and until the Confirmation Date all such rights are specifically reserved.

23.4     All administrative claims must be filed within 60 days of the Date of Confirmation; provided, however that any administrative claim incident to any steps to prosecute the Preference Action (incurred after the Effective Date) and incident to acting as Distribution shall be filed on a quarterly basis.

23.5     In the event an objection is filed to any claim, no distributions shall be made on account of such claim until such claim becomes an Allowed Claim.

23.6     After payment of all dividends owed to the holder of an Allowed Secured Claim, each such creditor shall execute and deliver all appropriate documents reasonably required to release any security interest held by each such creditor in any assets of the Debtor.

[27]

23.7    No later than 30 days after the Effective Date, Advantage Funding shall execute and deliver, in proper form, a release of any liens which Advantage Funding may have claimed against any of the Debtor's vehicles.

23.8    Ally shall not receive any payment as an Allowed Secured Claim from the Debtor under this Plan incident to any loan extended by Ally to the Debtor Jayaraman.  The collateral for this loan is a 2017 Porsche Macan. However, the amount of this debt (embodied in Proof of Claim No. 4) shall be paid as a general unsecured Class 12 claim.  Effective upon confirmation of this Plan, the Debtor shall transfer its interest in the 2017 Porsche Macan to Jayaraman (subject to the lien in favor of Ally).  The rights of Ally with respect to Jayaraman, who is a co-maker of the note payable to Ally, remain in full force and effect and are neither limited, adjusted, nor impaired by this Plan.

23.9    The Debtor reserves the right, incident to the disposal of any motor vehicle, to pre-pay the remaining balance due for any Allowed Secured Claim with respect to such vehicle.  In the event of such pre-payment, the Debtor may deduct the amount of the monthly dividend attributable to such vehicle from the Debtor Monthly Payments to be tendered to the Distribution Agent.

23.9    In the event of any conflict between a value stated in the Plan and the value set forth in and Exhibit to the Plan, the value set forth in the Exhibit shall control.

23.10   Any reference to an Article of Section in this Plan shall, without more, be deemed a reference to an Article of Section of this Plan.

23.11   Any headings used with respect to any Article or Section of this Plan shall be for ease of reference only and shall not be applied to interpret the text of any Article of Section of this Plan.

Respectfully submitted by:


*/s/ John P. Forest, II*
John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
Telephone: (703) 691-4940
Email: john@forestlawfirm.com
*Counsel for the Debtor*


## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2021, that I have electronically filed this AMENDED

PLAN OF REORGANIZATION which provides electronic notice of such filing to all parties who

receive notice in this matter; and that I have mailed a true and correct copy of the foregoing

pleading to those parties as identified on and as set forth in the Mailing Matrix attached hereto.


*/s/ John P. Forest, II*
John P. Forest, II